UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC, | CASE NO. C18-518 MJP |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | |
| BREWBAKERS, INC, et al., | |
| Defendants. | |

The above-entitled Court, having received and reviewed:

1. Plaintiff's Motion to Dismiss Defendants' Counterclaims for Failure to State a Claim (Dkt. No. 29),

2. Defendants' Opposition to Plaintiff's Motion to Dismiss Counterclaims (Dkt. No. 30),

3. Plaintiff's Reply in Support of Motion to Dismiss Defendants' Counterclaims for Failure to State a Claim (Dkt. No. 31),

all attached declarations and exhibits, and relevant portions of the record, rules as follows:

IT IS ORDERED that the motion is GRANTED, with leave to amend.

IT IS FURTHER ORDERED that Defendants have 14 days from the date of this order to file an amended answer and counterclaim.

**Background**

Plaintiff's complaint alleges violations of 47 U.S.C. § 605 and 47 U.S.C § 553 (theft of a cable signal) and the tort of trespass of chattel against Defendants BrewBaker, Inc. (d/b/a BrewBakers Brewery) and Eleanor and Robert Brubaker. Dkt. No. 1 ("Complaint"). Following the filing of an answer and counterclaim by Defendants (Dkt. No. 28; "Answer," "Counterclaim"), Plaintiff filed the instant motion to dismiss.

The complaint alleges an unauthorized showing of a pay-per-view ("PPV") boxing match at a commercial establishment owned and operated by the individual Defendants ("the Brubakers"). *See* Complaint at ¶¶ 26, 34, and 39. Defendants assert as affirmative defenses that they have no commercial establishment containing a television, have never shown a television event for profit at their brewery, and paid the appropriate viewing fees for a private residential screening of the boxing match. *See* Answer, Affirmative Defenses at ¶¶ 2-4.

Defendants also bring counterclaims against Plaintiff for "trespass, intentional trespass, and intrusion," and for a violation of RCW 19.86.090, Washington's Consumer Protection Act ("CPA"). Id., Counterclaim, ¶¶ 10, 13-18. It is these counterclaims which are the subject of Plaintiff's motion to dismiss.

**Discussion**

Standard of review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must

construe the complaint in the light most favorable to the non-moving party. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005). The Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). As a result, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

The Court agrees with Plaintiff in at least one regard: Defendants' counterclaims are not well-drafted. However, as explained in greater detail below, the Court is unable to find that it would be futile to permit Defendants to amend to properly plead their claims.

Trespass/intrusion

Because Defendants plead both "trespass" and "intentional trespass," Plaintiff is forced to speculate that Defendants possibly intended to allege *negligent* trespass and intentional trespass. The Court agrees with Plaintiff that, based on Defendants' allegations (the counterclaim alleges that "[a]n agent for Plaintiff intentionally trespassed onto the private property of Defendants uninvited…"; Id. at ¶ 10), there are no grounds for a claim of negligent trespass.

The Counterclaim does, however, allege the majority of the elements of an intentional trespass (an invasion affecting an exclusive possessory interest as the result of an intentional act, reasonable foreseeability, and "substantial damage to the *res*;" Jackass Mtn. Ranch, Inc. v. S.

Columbia Basin Irr. Dist., 175 Wn.App. 374, 401 (2013)). *See* Counterclaim at ¶¶ 9-10.  Should Defendants choose to re-plead this portion of the counterclaim, they will need to allege facts in support of the "damages" element; nowhere in the current pleadings are there any allegations of "substantial damage to the *res*."

Likewise, construing the counterclaims in the light most favorable to the non-moving party, the Court finds sufficient facts alleged to support the allegations of "intrusion."  "Invasion of privacy by intrusion" is defined as

> a deliberate intrusion, physical or otherwise, into a person's solitude, seclusion, or private affairs. The intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen.

Fisher v. Dep't of Health, 125 Wn. App. 869, 879 (2005).  While it is not well-plead in terms of linking factual allegations to elements of the tort, the Court finds that under the facts as alleged (the deliberate intrusion, past "No Trespassing" signs, of an uninvited person into a private residential space), the claim is plausible and it is reasonable to infer that Plaintiff could be found liable.

For reasons best known to them, however, Defendants make no response to Plaintiff's motion to dismiss this portion of their counterclaims.  If Defendants intend to abandon these claims, that is certainly their right.  Since they will be allowed to amend to properly plead their other counterclaim, the Court will not dismiss the trespass/intrusion claims at this point, and Defendants may re-plead them with more specificity or abandon them, as they choose.

Consumer Protection Act

The elements of a CPA claim are "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

property; (5) causation." <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn. 2d 778, 780 (1986). Plaintiff attacks this counterclaim on almost every element.

*Unfair or deceptive act or practice*

Regarding the "unfair or deceptive act or practice," the company first argues that the conduct alleged in the counterclaim (Plaintiff's agent trespassing on Defendants' property and taking photos/videos without Defendants' permission, and J&J "falsely accusing" Defendants of pirating the broadcast; Counterclaim at ¶ 13) does not "mislead or misrepresent anything with respect to any financial transaction." Plaintiff cites nothing in the case law that requires that the conduct in violation of the CPA be related to a "financial transaction," and the Court is unaware of any.

Plaintiff next seeks to introduce material from outside the pleading at issue (a screenshot of a Facebook page and the affidavit of its investigator; Dkt. No. 29 at 12-13 [Ex. 1] and Dkt. No. 20 [Ex. 3]). The documents are introduced to controvert Defendants' allegations of trespass to the extent that they are plead as an "unfair or deceptive act or practice" for CPA purposes. Although it appears from Defendants' response that they are not alleging trespass as an element of their CPA counterclaim (*see below*), the Court addresses Plaintiff's introduction of the outside materials in the event they become an issue in future motions practice.

First, Plaintiff cites to an attached screenshot of a Facebook page. Dkt. No. 29, Ex. 1. While there is case law that Facebook pages are subject to judicial notice (*see* <u>Dzinesquare, Inc. v. Armano Luxury Alloys, Inc.</u>, 2014 WL 12597154 at *3 (C.D.Calif., Dec. 22, 2014)), the exhibit is not authenticated in any fashion, leaving the Court to speculate as to how it was obtained and what it actually represents (e.g., whether this was a Facebook page that was accessible to the public).

1  Plaintiff also attempts to cite to the affidavit of its investigator, on the grounds that it may be introduced as a document on which the complaint is based ("a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned;" Swartz v. KPMG LLC, 476 F.3d 756, 763 (9th Cir. 2007)). However, the affidavit is mentioned nowhere in the Counterclaim, nor does Plaintiff explain how it deduced that Defendants relied on the document in preparing their pleadings. Additionally, although Plaintiff claims that "Defendants' allegations are also expressly contradicted by the investigator himself" (Dkt. No. 29 at 7), it is never explained how the affidavit contradicts the pleadings, and the Court's review of the document reveals no "contradictions."

Returning to the CPA counterclaim: What becomes apparent from Defendants' responsive briefing is that Defendants are not alleging "trespass/intrusion" as an "unfair or deceptive act or practice" for purposes of pleading their CPA claim – it is Plaintiff's filing of the lawsuit against them that they are contending satisfies this element of the CPA, and it is the parties' argument over whether the litigation itself can serve as grounds for a CPA cause of action that is really the main bone of contention in this motion.

Plaintiff first argues that Washington case law does not make lawsuits actionable under the CPA. The company cites a state appellate opinion that "[t]he CPA does not apply to claims directed to the competence of and strategy employed by attorneys." Demopolis v. Peoples Nat'l Bank of Washington, 56 Wn.App. 105, 119 (1990). The case does not support Plaintiff's argument – the CPA claim in Demopolis was against an attorney and his law firm and is inapplicable to Defendants' claim that J&J's practice of serial lawsuits for enforcing their PPV broadcast rights is a CPA violation. Defendants' counterclaim is against a company for an

allegedly unfair practice, not an attorney or law firm for incompetency or questionable strategic decisions.

Defendants' legal theory concerning the lawsuit is composed of two arguments. In the first part, they contend that one of the defining characteristics of an "unfair or deceptive act or practice" is that it has "a capacity to deceive a substantial portion of the public;" deception being defined as "a representation, omission or practice that is likely to mislead a reasonable consumer" ("intent" is not required). State v . Mandatory Poster Agency, Inc., 199 Wn.App. 506, 518 (2017). Citing case language that the misrepresentation must be in regards to "something of material importance" (id. at 519), Defendants contend that the mischaracterization of their conduct as "the unlawful interception of Plaintiff's program" for the purposes of personal financial gain is a "misrepresentation of material importance" which has the capacity to deceive. Dkt. No. 30 at 4.

The Court is not persuaded by this position. The "litigation privilege" is discussed in greater detail below, but if Defendants' argument is that, in filing a claim which misrepresents what actually happened, Plaintiff is "deceiving" the public into believing that the Brubakers are lawbreakers, that allegation is covered by the litigation privilege. This portion of Defendants' theory is essentially a claim of defamation and a party cannot sue for "defamatory" allegations which appear in a civil complaint (*see* "Litigation privilege" section *infra*).

The second part of Defendants' argument, however, is more persuasive. The Brubakers cite The Honorable Ronald B. Leighton of this district in a 2014 opinion for the proposition that "if a party routinely files lawsuits as part of its business, its conduct, pleadings, affidavits and testimony within those lawsuits *are* within the sphere of trade or commerce." Allstate Ins. Co. v. Tacoma Therapy, Inc., 2014 WL 1494100 at **5 (W.D. Wa., Apr. 16, 2014)(emphasis in

original). Judge Leighton based his decision on a Washington appellate ruling against a collection agency which found that filing lawsuits was a part of the business of a collection agency, therefore properly considered as an act "within trade or commerce" and suitable for CPA litigation. Cruson v. A.A.A.A., Inc., 140 Wn.App. 1012, 2007 WL 2363445 at *6 (2007).

Defendants cite to Plaintiff's prior motion for default (where the company cites to nine similar lawsuits it has filed; *see* Dkt. No. 19 at 5-10) in support of their argument that lawsuits like the one against them are part of J&J's business. The Court agrees. And if such lawsuits are within the sphere of trade and commerce for CPA purposes, then they are subject to an "unfair or deceptive act or practice" analysis, and Defendants can sufficiently plead a plausible claim in that regard. The Court agrees with Plaintiff that Defendants' current pleading is not adequate in failing to connect its factual allegations to the elements of the violation. However, it would not be futile to permit Defendants a chance to amend and connect the factual allegations they have made to the elements of their CPA counterclaim in a manner which sufficiently states a claim upon which relief can be granted.

*Occurring in trade or commerce*

The above analysis suffices to establish that Defendants have the ability to state a CPA counterclaim on the grounds that filing lawsuits like this one is part of Plaintiff's business and thus "occurring within trade or commerce." Again, they need to plead it properly, but it does appear to the Court that Defendants have sufficient factual allegations to adequately plead this element of the violation.

*Public interest impact*

"An act or practice is injurious to the public interest if it has the capacity to injure other persons." RCW 19.86.093(3)(c). The likelihood that other parties have been or will be injured

in the same fashion transforms a dispute into one which affects the public interest. Rhodes v. Rains, 195 Wn.App. 235, 247 (2016). Plaintiff attacks the counterclaim for Defendants' failure to plead the public interest impact, and in fact it does not. The facts cited *supra* regarding evidence of the multiple lawsuits filed by the company, however, demonstrate that Defendants can amend to properly plead this element of their CPA counterclaim.

*Injury to property or business*

This is another element which Defendants have failed to adequately allege in their current pleading. However,

> Injury to property or business is broadly construed and is not restricted to commercial or business injury. *[cit'n omitted]* Even minimal injury is sufficient to meet the damages element of a CPA claim. *[cit'n omitted]* Costs incurred in investigating an unfair or deceptive act are sufficient to establish injury.

Univ. of Wash. v. Gov't Emps. Ins. Co., 200 Wn.App. 455, 476 (2017).

Defendants cite to the costs they have incurred in defending this lawsuit, and these could be plead analogously to "costs incurred in investigating an unfair or deceptive act." Defendants do allege that they "have incurred substantial costs as a result of J&J's unfair or deceptive acts" (Counterclaim at ¶ 16), but Plaintiff is entitled to more specific description of the injury as an element of a CPA violation (since not all "injuries" – e.g., "emotional distress, embarrassment," which are also alleged in Defendants' pleading – qualify for CPA relief).

In summary, while Defendants have failed to adequately plead their CPA counterclaim at this point, their legal theory is legitimate and plausible and they have enough factual allegations to create a reasonable inference the Plaintiff could be found liable for at least some of the damage they claim. Since it would not be futile to permit them to amend to properly plead the violation, they will be permitted to do so.

Litigation privilege

Sensing that Defendants are trying to base liability on the lawsuit itself, Plaintiff attempts to interpose "the litigation privilege" as a ground for dismissal.

> The defense of absolute privilege applies to statements made in the course of judicial proceedings and avoids all liability. Gold Seal Chinchillas, Inc. v. State, 69 Wn.2d 828, 830, 420 P.2d 698 (1966). "A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, if it has some relation thereto." Restatement of Torts § 588, at 233 (1938).

Twelker v. Shannon & Wilson, 88 Wn.2d 473, 475 (1977).

What Plaintiff seeks is a misapplication of the doctrine. This immunity is invoked primarily in response to allegations of defamation and applies to <u>statements</u> made in the course of a judicial proceeding, not to the proceedings themselves. If the litigation privilege extended to the fact of filing a lawsuit, it would (for example) completely wipe out the tort of malicious prosecution.

Defendants do not (and cannot) specifically allege defamation in their counterclaim as a result of the filing of the suit against them. But in challenging Plaintiff's choice to sue them as an "unfair act" in violation of the CPA, they have effectively removed themselves from the application of the litigation privilege.

**Conclusion**

Defendants have, at this point, not succeeded in pleading a counterclaim which connects their factual allegations with the elements of the violations they allege in a manner which would permit the Court to reasonably infer that Plaintiff could be found liable for the damage which Defendants allege. It would not be futile to allow them to amend their pleadings to do so, however, and the Court so orders.

Plaintiff's motion is GRANTED, and Defendants will be permitted 14 days from the date of this order to file an amended answer and counterclaim which corrects the defects noted above.

The clerk is ordered to provide copies of this order to all counsel.

Dated May 21, 2019.

Marsha J. Pechman
United States Senior District Judge